IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

HALLIE THOMPSON                          Case No. 3:13-cv-00437-MA

                    Plaintiff,           OPINION AND ORDER

         v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                    Defendant.

MERRILL SCHNEIDER
P.O. Box 14490
Portland, OR 97293

         Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
District of Oregon
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-2902

JORDAN D. GODDARD
Social Security Administration
Office of the General Counsel
701 Fifth Ave., Suite 2900, M/S 221A
Seattle, WA 98104-7075

         Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Hallie Thompson seeks judicial review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C §§ 401-403. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons that follow, I reverse the decision of the Commissioner and remand this action for further proceedings.

## PROCEDURAL AND FACTUAL BACKGROUND

On February 2, 2008, plaintiff was involved in a severe head-on motor vehicle accident, resulting in bilateral pilon ankle fractures. Plaintiff's fractures required open reduction and internal fixation (ORIF) surgery in which the bones were reduced (put back into place) and then fixed into place with plates, pins and screws. Plaintiff was hospitalized for 17 days, then used a wheelchair for several months before undergoing physical therapy to walk with crutches. On February 17, 2009, after plaintiff's fractures healed, plaintiff underwent surgery to remove the hardware. Plaintiff filed an application for disability insurance benefits on September 10, 2009, alleging disability due to her ankle fractures with residual arthritis, chronic pain, and depression.

Plaintiff's claims were denied initially. On reconsideration, plaintiff's application was approved for a closed period of

disability from February 2, 2008 through March 31, 2009.  Tr. 72.
Plaintiff filed a request for a hearing before an administrative
law judge (ALJ).  An ALJ held a hearing on August 30, 2011, at
which plaintiff appeared with her attorney and testified.    A
vocational expert, Richard Hincks, also appeared and testified.  On
September 12, 2011, the ALJ issued an unfavorable decision.    The
Appeals  Council  denied  plaintiff's  request  for  review,  and
therefore, the ALJ's decision became the final decision of the
Commissioner for purposes of review.

Plaintiff was 19 years old on her alleged disability onset
date, and was 23 years old on the date of the ALJ's decision.
Plaintiff has a high school education and past relevant work as a
cashier checker at a grocery store.

## THE ALJ'S DISABILITY ANALYSIS

The  Commissioner  has  established  a  five-step  sequential
process for determining whether a person is disabled.  Bowen v.
Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920.  Each step
is potentially dispositive.  The claimant bears the burden of proof
at steps one through four.  See Valentine v. Commissioner Soc. Sec.
Admin., 574 F.3d 685, 689 (9th Cir. 2009); Tackett v. Apfel, 180
F.3d 1094, 1098 (9th Cir. 1999).  At step five, the burden shifts
to the Commissioner to show that the claimant can do other work
which exists in the national economy.  Andrews v. Shalala, 53 F.3d
1035, 1043 (9th Cir. 1995).

The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through June 30, 2010. A claimant seeking DIB benefits under Title II must establish disability on or prior to the last date insured. 42 U.S.C. § 416(I)(3); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since her alleged onset of disability. At step two, the ALJ found that plaintiff had the following severe impairments:  fractures of both ankles with residual arthritis and chronic pain; depression; and prescription drug dependence. At step three, the ALJ found that plaintiff's impairments, or combination of impairments did not meet or medically equal a listed impairment. The ALJ assessed plaintiff with a residual functional capacity to perform less than the full range of sedentary work, such that plaintiff can lift ten pounds occasionally and less than 10 pounds frequently; she can stand and walk for not more than two hours a day; she can sit without limitation; she can occasionally operate foot controls; she can occasionally climb, kneel, crouch, and crawl; she should never balance; she should avoid exposure to hazardous machinery and unprotected heights; and she is limited to performing entry level work.

At step four, the ALJ found plaintiff is unable to perform her past relevant work. At step five, the ALJ concluded that considering plaintiff's age, education, work experience, and

residual functional capacity, jobs exist in significant numbers in the national economy that plaintiff can perform.  Accordingly, the ALJ concluded that plaintiff is not disabled within the meaning of the Act.

## ISSUES ON REVIEW

On appeal to this court, plaintiff contends the following errors were committed: (1) the ALJ failed to properly evaluate the opinion of her treating physician, L. Teresa Callahan, M.D.; (2) the ALJ improperly assessed plaintiff's credibility; and (3) the ALJ adopted representative occupations that exceed her RFC at Step Five.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); Andrews, 53 F.3d at 1039.  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.; Valentine, 574 F.3d at 690.  The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation.  Batson v. Commissioner Soc. Sec. Admin., 359 F.3d

1190, 1193 (9th Cir. 2004); Andrews, 53 F.3d at 1039-40.  If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISCUSSION

### I.   The ALJ's Evaluation of the Medical Evidence

**A.   Standards**

An ALJ may reject a treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are supported by substantial evidence in the record.  Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1232 (9th Cir. 2011).  In general, the opinion of a treating physician is given greater weight than the opinions of other physicians.  See Orn v. Astrue, 495 F.3d 625, 631-32 (9th Cir. 2007)(treating physician's opinion is given controlling weight if it is well-supported and not inconsistent with the other substantial evidence in the record).

A nonexamining physician is one who neither examines nor treats the claimant.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir.1995).  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating

physician." Taylor, 659 F.3d at 1233 (quoting Lester, 81 F.3d at 831).

**B.    Analysis**

Plaintiff argues the ALJ erred in evaluating Dr. Callahan's opinion that plaintiff could not function in a competitive work environment.    Plaintiff established care with Dr. Callahan on September 21, 2010, for chronic pain in her ankles.   Dr. Callahan's treatment notes reflect that plaintiff reported being treated with a variety of pain medications and had begun using Methadone two months prior, and that plaintiff wanted to use something else for pain because of concerns about the addictive qualities of Methadone and potential withdrawal symptoms.   Tr. 564.   Dr. Callahan's notes also reflect that plaintiff reported depression, but was having good results with an antidepressant.   Id.   Over the next several months, Dr. Callahan tapered plaintiff's Methadone prescription, with plaintiff reporting withdrawal symptoms and difficulty reducing her Methadone below 17.5 milligrams a day.   Tr. 539-559. Dr. Callahan treated plaintiff's withdrawal symptoms with various medications and placed plaintiff on Oxycodone for pain.   On April 5, 2011, plaintiff reported difficulty reducing her Methadone to 15 milligrams per day due to severe withdrawal symptoms.   Tr. 539.

Dr. Callahan's efforts to wean plaintiff off Methadone were unsuccessful.   In a May 24, 2011 treatment note, Dr. Callahan stated that plaintiff decided to stay on Methadone because she

reported "good all day and all night relief of her pain to the point that she can function relatively normally." Id.  Plaintiff requested a daily Methadone dose of 40 milligrams, and Dr. Callahan advised plaintiff that she should stop taking Oxycodone and slowly increase her Methadone intake.  Id.  In an August 5, 2011 treatment note, Dr. Callahan reported that plaintiff was taking far more Methadone than prescribed (100 milligrams daily), and advised plaintiff that if she failed to follow instructions, Dr. Callahan would no longer prescribe pain medications.  Tr. 518.  As the ALJ correctly indicated – and plaintiff does not dispute – she has developed a prescription drug dependency.

In an August 29, 2011 letter, Dr. Callahan described that plaintiff experiences pain with any weight-bearing activity, including walking or standing, and that she requires continual pain medication.  Tr. 566.  According to Dr. Callahan, plaintiff's pain medication causes her sedation, memory difficulties and other side effects.  Dr. Callahan opined that plaintiff would be able to stand for one hour, and sit for four hours, walk for 15 minutes, and would need to lie down for a portion of each day.  Dr. Callahan opined that plaintiff would have difficulty concentrating and would be impaired throughout the work day.  Dr. Callahan further opined that plaintiff would miss much more than two days of work each month even in a simple, seated job, and that plaintiff could not function in a competitive work environment.  Id.

The ALJ gave Dr. Callahan's opinion limited weight, finding that the opinion was undermined by other medical evidence and that Dr. Callahan's opinion was inconsistent with her own treatment notes. Plaintiff contends that the ALJ failed to provided specific and legitimate reasons for discounting Dr. Callahan's opinion, and that the ALJ's reasoning is not supported by substantial evidence in the record. Plaintiff is correct.

In the decision, the ALJ cited conflicting evidence from plaintiff's surgeon, Richard Gellman, M.D., who released plaintiff to light duty, seated work on August 25, 2008. Tr. 297. The ALJ also cited physical therapy records from July and December of 2008 indicating that plaintiff is able to ambulate with crutches without pain, and that January 2009 x-rays showed that her fractures had healed. Tr. 230-31. However, in light of the record as a whole, I conclude that the ALJ's reasoning does not sufficiently support discounting Dr. Callahan's opinion.

For example, the ALJ correctly indicated that Dr. Gellman released plaintiff to sedentary work in August of 2008, however, the ALJ failed to discuss that in January of 2009, plaintiff complained to Dr. Gellman of increased pain and stiffness, especially with initiating range of motion activities or descending stairs. Tr. 313. Dr. Gellman's treatment notes also reflect "symptomatic hardware" and early posttraumatic arthritis. Id. Moreover, the ALJ did not discuss that on February 14, 2009, Dr.

Gellman surgically removed plaintiff's hardware.  Tr. 300.  The ALJ
failed to discuss that Dr. Gellman's diagnosis of arthritis was
confirmed by x-rays, which showed severe lateral tibiotalar joint
space narrowing in her right ankle, and mild degeneration in the
left ankle.  Tr. 434.

The ALJ also failed to discuss any treatment plaintiff
received from Bayshore Family Medicine, including evidence from
Albert P. Thompson, M.D., who indicated that beginning in May of
2009, plaintiff reported increased ankle pain, particularly with
weight-bearing activity.  Tr. 378.  Treatment notes reflect that
plaintiff was frustrated by her lack of improvement in physical
therapy following hardware removal, and that she remained unable to
stand for more than two hours.  Tr. 390.  Moreover, Dr. Thompson
expressed concern that plaintiff had been using double her
prescribed pain medication and placed her on a pain contract on
September 22, 2009.  Tr. 392, 360-61.

Additionally, the ALJ failed to discuss the opinion of
examining physician John-Paul Veri, M.D., a sports medicine
orthopedic specialist to whom plaintiff was referred by Dr.
Thompson.  Dr. Veri conducted an orthopedic foot and ankle
consultation on March 2, 2010, and determined that plaintiff's
maximum walking tolerance was 15 to 20 minutes and that her
"[l]imitation in recreational activities is positive by way of
being essentially housebound due to her limitations."  Tr. 422.

Dr. Veri noted that weight-bearing x-rays showed severe degeneration of tibiotalar joints, worse in the right. Tr. 424.

Based on my careful review of the entire record, it is clear that plaintiff did experience improvement following her ORIF surgery in 2008. However, contrary to the ALJ's conclusion, plaintiff experienced worsening of her symptoms in January of 2009, with posttraumatic arthritis, that the ALJ failed to discuss. Thus, the ALJ's citation to records from 2008 only as a basis to discount Dr. Callahan's opinion is not supported by substantial evidence in the record as a whole. See Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007)(reviewing court may not affirm the ALJ's opinion by isolating a specific quantum of supporting evidence, but must view the record as a whole).

Furthermore, I reject the Commissioner's suggestion that the ALJ legitimately rejected Dr. Callahan's opinion in favor of Dr. Gellman's because Dr. Gellman was a specialist. Although such a basis may be valid, I am "constrained to review the reasons the ALJ asserts." Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).

I conclude that substantial evidence does not support the ALJ's finding that Dr. Callahan's opinion was internally inconsistent. In this regard, the ALJ found that Dr. Callahan's September 21, 2010 treatment note stating that plaintiff did not have "a disability" was inconsistent with Dr. Callahan's August 29, 2011 opinion that plaintiff is unable to sustain competitive

employment. Tr. 26. However, when read in context, Dr. Callahan's September 21 treatment note shows that Dr. Callahan was writing about plaintiff's means of support, including her lack of disability benefits. Even if I were to agree with the Commissioner that the ALJ's interpretation of this specific evidence was reasonable, I conclude that this reason alone does not amount to specific and legitimate support to reject Dr. Callahan's opinion. Therefore, I conclude that the ALJ's error in evaluating the opinion of Dr. Callahan is not harmless. See Molina v. Astrue, 674 F.3d 1104, 1118-19 (9th Cir. 2012)(court will not remand for errors that are inconsequential to the ultimate nondisability determination).

II.  **Plaintiff's Credibility**

    A.  **Standards**

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. 20 C.F.R. §§ 404.1529, 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008); Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996). At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting

the claimant's testimony regarding the severity of the symptoms. Carmickle v. Commissioner Soc. Sec. Admin., 533 F.3d 1155, 1166 (9th Cir. 2008); Lingenfelter, 504 F.3d at 1036.

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. Tommasetti, 533 F.3d at 1039; Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002). Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. Tommasetti, 533 F.3d at 1039.

At the hearing, plaintiff testified that she is on painkillers that impact her memory. Plaintiff described that she has been diagnosed with an adjustment disorder, is prescribed antidepressants, and does not see a counselor or otherwise receive mental health treatment. Plaintiff also testified that she feels helpless, and occasionally suffers anxiety.

Plaintiff stated that after her car accident, she was on short term pain medication, then switched to Fentanyl patches. Plaintiff stated that she developed a sensitivity to the adhesive on the patches, and switched to Methadone to control her pain. Plaintiff testified that she was unable to get off of Methadone completely

and has decided to stay on Methadone because it is effective. Plaintiff stated that she is planning to start aquatic physical therapy.  Plaintiff described that she cannot lift more than 20 pounds, and does not perform household chores because they cause pain.

In an October 29, 2009 Function Report, plaintiff stated that her pain is greatest in the morning and occasionally prevents her from sleeping.  Plaintiff stated that she can no longer balance, and must sit down to get dressed and shower.  Plaintiff stated that she can make simple meals for herself and that preparing longer meals causes pain.  Plaintiff described that she can do her own laundry with frequent breaks, and does not perform yard work. Plaintiff stated she is able to drive a car and can shop for approximately two hours with several breaks to sit.  Plaintiff described that she reads, watches television, and plays video games while sitting.  Plaintiff noted that she can lift 15 pounds, and that squatting and kneeling are painful because she does not have flexibility in her ankles.  Plaintiff stated that she can walk for 20 to 30 minutes before needing to rest. Plaintiff expressed no limitation with concentration, following instructions, or authority figures.  In a Pain and Fatigue Questionnaire, plaintiff described aching pain in her ankles that lasts all day, every day, and that standing exacerbates her pain.

14 - OPINION AND ORDER

In the decision, the ALJ found that plaintiff was not entirely credible for two reasons: (1) plaintiff's allegations of disability were inconsistent with the objective medical evidence, and (2) plaintiff is dependent on prescription pain medication. I conclude that based on the record as a whole, the ALJ's credibility findings do not rise to the clear and convincing level.

Inconsistencies between a plaintiff's complaints and the medical evidence are valid credibility considerations, but may not be the only factor supporting the ALJ's findings. Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007). In the decision, the ALJ discredited plaintiff on the basis that she was released to sedentary work in 2008. As discussed at length above, in this case, the ALJ's citation only to plaintiff's improvement in 2008 fails to take into consideration plaintiff's condition in early 2009 and attendant arthritis, and therefore, this portion of the ALJ's reasoning is not supported by substantial evidence in the record as whole. Accordingly, the ALJ erred in relying upon plaintiff's limited improvement in 2008 as a basis for discrediting her.

The ALJ also misstated plaintiff's hearing testimony, noting that plaintiff was walking unaided within five months of her accident.[1] Tr. 25. On the contrary, plaintiff testified at the

---

[1]It is unclear whether this erroneous finding is the basis for the ALJ's step three analysis of Listing 1.06. At step three, the ALJ summarily discussed plaintiff's ambulation, but as

hearing that after the accident, she remained in a wheelchair for several months, and began physical therapy for walking in July 2008. Tr. 38. Moreover, a December 16, 2008 physical therapy treatment note indicates that plaintiff used bilateral crutches ambulate 200 feet, and that she remained unable to manage stairs or uneven ground independently. Tr. 230. Thus, ALJ's finding is not supported by substantial evidence.

Additionally, the ALJ's finding that plaintiff's June to September 2009 physical therapy records undermined her allegations of disability are only partially supported by the record. Plaintiff's physical therapy records from June through July 2009 reflect that plaintiff was using a rocker-type shoe for ambulation, but that she had some swelling and difficulty with prolonged gait. Tr. 321-31. In August 2009, plaintiff's physical therapist noted that plaintiff reported pain at a seven to eight on a ten point scale with activity, and that she had difficulty ambulating on stairs and uneven surfaces. Tr. 337. In September of 2009, plaintiff's physical therapy treatment notes reflect that she reported decreased pain with ambulation, improved ambulation endurance, and increased mobility on uneven surfaces. Tr. 341.

Although plaintiff's 2009 physical therapy records indicate some improvement, the records do not quantify plaintiff's sustained

noted, there is conflicting evidence in the record concerning plaintiff's abilities that must be resolved on remand.

16 - OPINION AND ORDER

ambulation, stair climbing ability, or distance traveled on uneven surfaces. Moreover, at that time, plaintiff was complaining to Dr. Thompson of increased pain with her increased activity level and frustration with her inability to sustain activity. Tr. 390. And, as noted above, the ALJ failed to discuss the March 2, 2010 opinion of Dr. Veri who noted that plaintiff's maximum walking tolerance was 15 to 20 minutes. Tr. 422. Examining the record as whole, I find that these unresolved conflicts in the medical evidence about plaintiff's abilities do not provide a convincing reason to discredit plaintiff.

The ALJ also discredited plaintiff on the basis that her mental impairments were not as severe as alleged. The ALJ detailed that plaintiff's mental impairments were controlled with an antidepressant, and that plaintiff reported increased mood symptoms when taking her medication. Tr. 371, 384, 459, 462, 520-21. Moreover, plaintiff admitted during the hearing that she does not receive counseling for her depression or adjustment disorder. This finding is supported by substantial evidence in the record and therefore the ALJ could discredit plaintiff on the basis that her mental impairments were not as severe as she alleged. See Parra, 481 F.3d at 751 (evidence of conservative treatment is sufficient to discount evidence regarding the severity of a claimant's impairment).

17 - OPINION AND ORDER

The ALJ also discredited plaintiff on the ground that she had become dependent upon Methadone. Evidence of symptom exaggeration and drug-seeking behavior are appropriate credibility considerations. See Edlund, 253 F.3d at 1157. A claimant's drug-dependency by itself, however, is not a basis for an adverse credibility determination. See Van Dine v. Astrue, 2012 WL 1069985, *48 (D. Or. Feb. 27, 2012), adopted 2012 WL 1068073 (Mar. 29, 2012)(adverse credibility determination based narcotic pain dependence and drug-seeking behavior must be supported by appropriate evidence; if narcotic dependence is basis of disability, then analysis under 20 C.F.R. § 404.1535 is required). Here, the ALJ did not explicitly find that plaintiff was exaggerating her symptoms in order to obtain narcotic pain medication. Despite several instances in the medical record where plaintiff's treating physicians expressed concern about plaintiff's non-compliance with her narcotic prescriptions, the ALJ does not discuss or cite such instances of non-compliance as support for the credibility finding.

For example, in a September 22, 2009 treatment note, Dr. Thompson observed that plaintiff had been taking double her prescribed narcotic pain medication, causing Dr. Thompson to place plaintiff on a pain contract. Tr. 360-61, 392. In an October 15, 2009 treatment note, Dr. Thompson denied plaintiff's request to change her Fentanyl patches every two days instead of every three

days as prescribed.  Tr. 395; see also Tr. 471.  And, in an August
5, 2011 treatment note, Dr. Callahan described that plaintiff was
non-compliant with her Methadone, taking well more than prescribed,
despite a recent doubling of her prescription.  Tr. 517-20.  While
there are instances of non-compliance and potential drug-seeking
behavior in the record, the ALJ did not invoke them as a basis for
the adverse credibility determination.  Again, I am constrained to
review the reasons asserted by the ALJ, and therefore, and I must
reject the post hoc rationalizations offered by the Commissioner.
Connett, 340 F.3d at 874.  Thus, plaintiff's prescription pain
medication dependency as noted in the ALJ's decision does not
afford a basis for discounting her testimony.

In sum, I have determined that only part of the ALJ's negative
credibility assessment is adequately supported.  Based on the
record before me, I conclude that these reasons, when taken
together, do not provide clear and convincing support for the ALJ's
finding and that the ALJ has erred.  Carmickle, 533 F.3d at 1162;
Tommasetti, 533 F.3d at 1040.

III. **Step Five**

In step five, the Commissioner must show that the claimant can
do other work that exists in the national economy.  Andrews, 53
F.3d at 1043.  The Commissioner can satisfy this burden by
eliciting the testimony of a vocational expert with a hypothetical

question that sets out all of the claimant's limitations that are supported by substantial evidence. Tackett, 180 F.3d at 1101.

Plaintiff argues that the ALJ erred at step five in adopting representative occupations that exceed her RFC. Because I have concluded that the ALJ erred in evaluating the medical evidence and plaintiff's testimony, I decline to address plaintiff's specific argument. Nevertheless, due to the ALJ's errors, it follows that substantial evidence does not support the ALJ's step five determination. Osenbrock v. Apfel, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

## IV.  Credit As True

After finding the ALJ erred, this court has the discretion to remand for further proceedings or for immediate payment of benefits. Vasquez, 572 F.3d at 593; Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000). The issue turns on the utility of further proceedings. See, e.g., Brewes v. Comm Soc. Sec. Admin., 682 F.3d 1157, 1164 (9th Cir. 2012).

The Ninth Circuit has established a three-part test for determining when evidence should be credited and an immediate award of benefits directed. Strauss v. Comm'r of Soc. Sec. Admin., 635 F.3d 1135, 1138 (9th Cir. 2011); Harman, 211 F.3d at 1178. The Court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is

clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Harman, 211 F.3d at 1178.  The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. Id.

On this record, I conclude further proceedings are necessary because it is not clear whether the ALJ would have found plaintiff can perform other work that exists in significant numbers in the national economy if the ALJ had properly considered the opinion of Dr. Callahan and plaintiff's testimony.  Additionally, I cannot remand this case for an immediate payment of benefits because the record contains numerous references to plaintiff's Methadone dependency.  Here, the ALJ did not find plaintiff disabled, and thus did not reach the question of materiality concerning her prescription drug abuse.  See generally Parra, 481 F.3d at 746-47 (discussing the required drug and alcohol analysis under 20 C.F.R. § 404.1535).

Based on the foregoing, I conclude a remand for further proceedings consistent with this Opinion and Order is required to permit the ALJ:  (1) to reconsider the opinion Dr. Callahan and resolve the conflicting medical evidence; (2) to reconsider plaintiff's testimony; (3) to consider whether any new findings made by the ALJ alter the evaluation of plaintiff's RFC or affect the decision as to whether plaintiff is capable of performing other

21 - OPINION AND ORDER

work that exists in significant numbers in the national economy, with assistance of a vocational expert if necessary; and (4) if plaintiff is found to be disabled, the ALJ must determine whether plaintiff's prescription pain addiction is a contributing factor that is "material" to the finding of disability.

## CONCLUSION

For the reasons stated above, the Commissioner's final decision denying benefits to plaintiff is REVERSED and this proceeding is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED this _4_ day of MARCH, 2014.

_Malcolm F Marsh_
Malcolm F. Marsh
United States District Judge